## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL CULCLASURE** | : **CIVIL ACTION** |
| | : |
| **v.** | : **NO. 18-1543** |
| | : |
| **COMMISSIONER OF THE SOCIAL** | : |
| **SECURITY ADMINISTRATION** | : |

## MEMORANDUM

**KEARNEY, J.**                                                                                    **April 16, 2019**

Michael Culclasure challenges the denial of disability insurance benefits by a Social Security Administration administrative law judge who — everyone now agrees — was not properly appointed under Article II of the Constitution. Consistent with the Administration's and the Solicitor General's July 2018 internal memoranda responsive to the Supreme Court's June 21, 2018 holding in *Lucia v. Securities and Exchange Commission*, the Commissioner concedes the constitutional infirmity but argues Mr. Culclasure forfeited his challenge by not timely raising it in July 2017 to the same infirmed judge under undefined procedures. Mr. Culclasure argues he did not forfeit his claim, and, in any case, it would have been futile to raise this constitutional challenge before July 2018.

Consistent with Supreme Court guidance in the less rigid Social Security process, and finding no clear statutory, regulatory or judicial authority in July 2017 when Mr. Culclasure participated in the video hearing inquisitive process before the admittedly *ultra vires* administrative law judge, we decline to add an exhaustion requirement in a July 2017 Social Security video hearing context by defining a constitutional challenge as "untimely" based on examples of timely challenges in adversarial hearings in other agencies. Even if we were to add an exhaustion requirement, we would excuse it as futile for Mr. Culclasure. We remand for a

hearing before another properly appointed administrative law judge in today's accompanying Order.

## I. Background

Michael Culclasure, currently forty-nine years old, applied for disability insurance benefits on December 10, 2014 alleging a disability onset date of March 29, 2011.[1] Mr. Culclasure alleges back injury and arthritis as disabling conditions.[2] The Social Security Administration denied his claim on February 20, 2015.[3] At Mr. Culclasure's request, Administrative Law Judge ("ALJ") Monica L. Flynn held a video hearing on July 5, 2017 with Mr. Culclasure and his counsel.[4] ALJ Flynn denied Mr. Culclasure's application for benefits, finding him not disabled under the Social Security Act.[5] Mr. Culclasure filed a request for review of ALJ Flynn's decision with the Appeals Council.[6] On March 14, 2018, the Appeals Council denied Mr. Culclasure's request for review rendering ALJ Flynn's decision final.[7]

Mr. Culclasure timely sought our judicial review of ALJ Flynn's decision. In his August 6, 2018 brief supporting his request for review, Mr. Culclasure raised, for the first time, an "alleged administrative error" in having the case resolved by an administrative law judge not properly appointed.[8] He argued ALJ Flynn's appointment violates the Constitution's Appointments Clause under a June 21, 2018 Supreme Court decision, *Lucia v. Securities and Exchange Commission*.[9] He sought remand to a different constitutionally appointed ALJ.[10]

The Commissioner responded Mr. Culclasure forfeited an Appointments Clause challenge by failing to timely raise it to either ALJ Flynn or the Appeals Council.[11] Mr. Culclasure replied he is not required to raise an Appointments Clause challenge at the administrative level and, even if there is such a requirement, it should be excused in this case because the ALJ had no authority to rule on a constitutional issue.[12]

2

We referred Mr. Culclasure's petition to the Honorable Jacob P. Hart, United States Magistrate Judge, for a report and recommendation. Judge Hart recommended we find Mr. Culclasure forfeited his Appointments Clause challenge by failing to raise it before ALJ Flynn in July 2017 or the Appeals Council in early 2018 and recommended we deny the request for review.[13] Mr. Culclasure timely objected to Judge Hart's report and recommendation.[14]

## II. Analysis

We address two questions in analyzing Mr. Culclasure's Appointments Clause challenge: did Mr. Culclasure forfeit his challenge by failing to raise it before ALJ Flynn in July 2017, and, even if there is a requirement to raise an Appointments Clause claim before ALJ Flynn, should we excuse his failure to do so.

### A. Did Mr. Culclasure forfeit his Appointments Clause challenge by failing to raise it before the ALJ or the Appeals Council?

There is no dispute Mr. Culclasure failed to raise an Appointments Clause argument before ALJ Flynn or the Appeals Council.[15] Mr. Culclasure argues he did not forfeit the issue by failing to raise it during the administrative proceedings because he is not required to do so. He argues the plaintiff in the Supreme Court's recent *Lucia* decision did not make an Appointments Clause challenge in two hearings before the ALJ, and the Court found the challenge timely. Mr. Culclasure argues it follows from *Lucia* he did not forfeit his Appointments Clause challenge by failing to raise it before the ALJ.

The Commissioner disagrees. She argues Mr. Culclasure forfeited his Appointments Clause challenge because he did not make a "timely challenge" at the administrative level. The Commissioner argues Mr. Culclasure failed to make his Appointments Clause challenge anywhere in the administrative process, making him different from the plaintiff in *Lucia* who first raised the challenge on appeal from the ALJ to the Securities and Exchange Commission. The Commissioner

3

points out nearly every federal court addressing this issue finds a Social Security claimant forfeits his Appointments Clause argument if he fails to make it at the administrative level as not "timely" relying on language used by the Supreme Court in *Lucia* as derived from its 1995 decision in *Ryder v. United States*.[16]

### *Lucia and the Social Security Administration's response.*

In *Lucia*, the Supreme Court considered whether administrative law judges of the Securities and Exchange Commission ("SEC") qualify as "Officers of the United States" within the meaning of the Appointments Clause.[17] The SEC brought an administrative proceeding against Lucia and his investment company, charging violations of the Investment Advisors Act.[18] After a hearing, the ALJ issued a decision finding Lucia violated the law and imposed sanctions and penalties. Lucia appealed to the SEC. There, Lucia argued invalidity of the administrative proceeding because the ALJ's appointment by SEC staff members violated the Appointments Clause.[19]

The SEC rejected Lucia's argument, finding its administrative law judges are not "Officers of the United States" and, instead, are "mere employees" falling outside the scope of the Appointments Clause.[20] Lucia appealed to the United States Court of Appeals for the District of Columbia Circuit. A panel of the court of appeals affirmed SEC administrative law judges are employees rather than officers and not subject to the Appointments Clause.[21] After rehearing *en banc*, an evenly divided court of appeals rendered a *per curiam* order denying Lucia's claim, a decision conflicting with a 2016 decision from the Court of Appeals for the Tenth Circuit.[22] The Supreme Court granted certiorari on January 12, 2018.[23]

On June 21, 2018, the Supreme Court held the SEC's ALJs are "Officers" within the meaning of, and subject to, the Appointments Clause.[24] Appointment of an ALJ by an SEC staff member - and not the President, court of law, or head of department - violates the Appointments

4

Clause.[25]  Having resolved the Appointments Clause issue, the Court then addressed the question of the appropriate remedy.  It found the appropriate remedy a new hearing before a "properly appointed official."[26]  The Court described an entitlement to relief by "one who makes a *timely challenge* to the constitutional validity of the appointment of an officer who adjudicates his case."[27]  Without description, the Court referred to Lucia's challenge on appeal to the SEC as well as in the Court of Appeals.[28]  The Supreme Court did not define "timely challenge" nor did it address an exhaustion argument.

Within weeks of *Lucia*, the President issued an Executive Order on July 10, 2018 excepting all administrative law judges appointed under 5 U.S.C. § 3105[29] from competitive service selection procedures.[30]  The Executive Order noted the "expanding responsibility for important agency adjudications, and as recognized by the Supreme Court in *Lucia*, at least some and perhaps all ALJs are 'Officers of the United States' and thus subject to the Constitution's Appointments Clause, which governs who may appoint such officials."[31]

The Acting Commissioner of the Social Security Administration similarly acted in the wake of *Lucia*. Within a month of the *Lucia* decision, the Commissioner ratified the appointments of all ALJs and approved their appointments as her own to address any Appointments Clause challenges involving Social Security claimants. The Social Security Administration issued an "Emergency Message" providing guidance to ALJs on Appointments Clause challenges.[32]  The Social Security Administration did not distinguish *Lucia* because it arose in an SEC proceeding.

The Emergency Message, to our review, is the first time the Social Security Administration confirms it did not constitutionally appoint administrative law judges like ALJ Flynn. The Emergency Message "instructs [ALJs] and administrative appeals judges (AAJs) on how to address Appointments Clause challenges regarding the appointment of ALJs or AAJs."[33]  The

5

Administration instructed its ALJs on the procedure to address Appointment Clause challenges made before and after the Acting Commissioner's July 16, 2018 ratification of ALJ appointments.[34] For Appointments Clause challenges made at the ALJ level before July 16, 2018, ALJs are instructed to acknowledge the challenge on the record and document an Appointments Clause challenge in the Agency's case processing systems "for any necessary action."[35] For challenges made at the ALJ level after July 16, 2018, ALJs are instructed to "*only* respond orally that 'the hearing decision will acknowledge that the argument was raised'" and, when issuing a written decision, add set language rejecting the constitutional challenge.[36]

For timely Appointments Clause challenges and timely requests for Appeals Council review, the Appeals Council is instructed to "consider the challenge in the context of the facts of the case (including, but not limited to, the date of the ALJ decision and the date the challenge was raised) in determining whether there is a basis to grant review."[37] The Appeals Council determines whether granting review is appropriate "when considering both the decision on the merits and any potentially unresolved Appointments Clause issues."[38]

The Department of Justice, Office of Solicitor General also issued a memorandum in July 2018 to all Agency General Counsels providing guidance to administrative law judges after *Lucia*. In summary, the memorandum extends the Supreme Court's reasoning in *Lucia* to all ALJs in all agencies; concluded all ALJs must be appointed in a manner consistent with the Appointments Clause; and, advised agencies should request voluntary remands only in cases where the challenge is "timely raised and preserved both before the agency (consistent with applicable agency rules) and in federal court," but where a claim is not timely raised, agencies should argue the challenge is forfeited.[39]

6

### *What is a "timely challenge"?*

In the ten months since the *Lucia* decision, most federal courts addressing Appointments Clause challenges have ruled, often without explanation, a claimant forfeits his Appointments Clause challenge if he fails to raise it in administrative proceedings. These decisions apply *Lucia's* "timely challenge" language generally to hold an Appointments Clause challenge is not timely unless raised before the administrative law judge.

But the Supreme Court in *Lucia* did not define what is untimely. It does not hold an Appointments Clause challenge must be raised before an ALJ to be timely. We know the Court in *Lucia* found a "timely challenge" where the plaintiff made his Appointments Clause challenge before the SEC (but not the ALJ) and the Court of Appeals.[40]

We may also look to *Ryder v. United States*,[41] relied on by the Court in *Lucia*, for guidance on defining a "timely challenge." In *Ryder*, an enlisted member of the Coast Guard challenged his conviction by a court martial. Ryder first challenged his conviction in the Coast Guard Court of Military Review and then in the United States Court of Military Appeals. In both the Court of Military Review and the Court of Military Appeals, Ryder challenged the appointment of two civilian judges who served on the Court of Military Review as violative of the Appointments Clause.[42] The Court of Military Appeals agreed the appointment of two civilian judges violated the Appointments Clause, but nevertheless affirmed the conviction finding the civilian judges were valid *de facto*.[43]

The Supreme Court reversed, finding the civil judges were not valid *de facto*. The Court found Ryder made his Appointments Clause challenge "while his case was pending before [the Court of Military Review] on direct review" and held "one who makes a timely challenge to the

constitutional validity of the appointment of an officer who adjudicates his case is entitled to a decision on the merits of the question ...."[44]

The cases finding a "timely" challenge involve the claimant challenging the appointment in the administrative agency. We understand the Court has largely presumed those challenges to be timely based on existing regulations. But we do not have guidance on whether a challenge raised shortly after the issue applies to Social Security ALJ is "untimely." The Supreme Court and our Court of Appeals has never held as such. Instead, the Supreme Court has only referenced the challenges as "timely" in *Ryder* and *Lucia.* Easily understood. But we cannot find Mr. Culclasure is "untimely" in the Social Security context because claimants before other agencies "timely" raised their challenge based on different regulations. We will not create a bright line definition of untimely in the Social Security context based on references to timely challenges before ALJs in other agencies. The examples of "timely" in *Ryder* and *Lucia* do not render all other types of challenges as untimely.

Defining "timely" requires a fact sensitive analysis in this context. We agree this "timely" language is non-jurisdictional.[45] As with cases involving forfeiture or waiver of non-jurisdictional requirements, we must examine the facts to evaluate efforts to comply and prejudice. We need to determine whether Mr. Culclasure forfeited a known right. If he knew of the right to challenge ALJ Flynn's appointment, and did not timely challenge, then we could better understand the Commissioner's arguments today. As such, our reasoning today applies only to Mr. Culclasure who raised this challenge in the first opportunity to do so after the Commissioner and Solicitor General confirmed the unconstitutional appointment of ALJ Flynn in July 2018.

### *What is a timely challenge in a social security hearing?*

The parties do not dispute the Commissioner did not define her ALJs as improperly appointed until the Emergency Message issued long after ALJ Flynn's challenged decision. We appreciate these challenges have been made in other agencies but the nature of Social Security appeals is different than the rigid adversarial context required by regulations governing the administrative process in other agencies.

In the Social Security context, Mr. Culclasure points to *Sims v. Apfel*, where the Supreme Court rejected a "judicially created issue-exhaustion requirement" at the Appeals Council level of the Social Security administrative process.[46] In *Sims*, the Court addressed the question of whether a claimant seeking judicial review of a denied Social Security claim waives any issue the claimant failed to include in a request for review before the Appeals Council. The Court did not examine whether a claimant must exhaust issues before the ALJ.

The Court described the question as one of "judicially created issue-exhaustion." The Commissioner argued to obtain judicial review, a claimant must not only obtain a final decision on his claim for benefits (*i.e.* administrative exhaustion), he must also "specify that issue in his request for review by the Council" (*i.e.* issue exhaustion).[47]   The Court rejected the Commissioner's "issue-exhaustion" argument. The Court reasoned "requirements of administrative issue exhaustion are largely creatures of statute" and there are no statutes or regulations within the Social Security Act requiring issue exhaustion. The Court recognized it has imposed an issue exhaustion requirement even without a statute or regulation but concluded its reason for doing so does not apply in the Social Security context. The Court differentiated Social Security proceedings from other administrative proceedings, finding Social Security proceedings "inquisitorial" rather than "adversarial."[48]

9

Recognizing its precedent on issue exhaustion "as a general rule," the Court found "[w]here the parties are expected to develop the issues in an adversarial administrative proceeding, it seems to us that the rationale for requiring issue exhaustion is at its greatest."[49] However, in the Social Security context - an "inquisitorial" proceeding - the requirement of issue exhaustion is "weakest."[50] The Court held in the Social Security context "a judicially created issue-exhaustion requirement is inappropriate" and "[c]laimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues."[51]

We read the Supreme Court's decision in *Sims* as identifying the limited role of judges in creating exhaustion doctrines in Social Security appeals. Absent controlling law from our Court of Appeals or a change in Supreme Court direction, we follow *Sims.* The difference in procedures between a telephone video hearing with an ALJ and an Appeals Council review does not distinguish the Supreme Court's direction in *Sims.* We join the Honorable Christopher C. Conner, Chief Judge of the United States District Court for the Middle District of Pennsylvania,[52] the Honorable Timothy R. Rice[53] and the Honorable Richard A. Lloret,[54] United States Magistrate Judges in this District, as well as the persuasive, well-reasoned decision of the Honorable Robert T. Numbers, United States Magistrate Judge for the United States District Court for the Eastern District of North Carolina[55] in rejecting the Commissioner's forfeiture argument and remanding the action back to the Commissioner for a hearing before a constitutionally appointed ALJ.[56]

The body of federal case law applying *Lucia* to find an Appointments Clause challenge timely only when raised at the ALJ level, emerging divergent opinions from, among others, Judges Conner, Rice, Lloret, and Numbers, and concerns raised by the Commissioner regarding the already-stressed Social Security Administration system are compelling factors making resolution

of the issue before us difficult. On review of the case authority and particularly guided by the Supreme Court's direction in *Sims*, we are persuaded to follow the Supreme Court teachings in *Sims*.

We base our conclusion on a reading of *Sims* and *Lucia*, and for many of the same reasons as Judges Conner, Rice, Lloret, and Numbers. In *Sims*, decided eighteen years before *Lucia*, the Court held "a judicially created issue-exhaustion requirement is inappropriate" and claimants "who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues."[57] *Sims* instructs there is no issue-exhaustion requirement at the Social Security Appeals Council.

The Commissioner distinguishes *Sims* as applying only to requests for review by the Appeals Council and the Court explicitly did not decide whether a claimant must exhaust issues before the ALJ as an issue not before it. The Commissioner argues Mr. Culclasure's failure to raise his Appointments Clause challenge *at any point* in the administrative process forfeits his claim.[58] But we know this is not so; *Sims* holds a Social Security claimant need not exhaust issues in a request for review by the Appeals Council. The Commissioner points us to *Ginsburg v. Richardson*, a 1971 decision by our Court of Appeals partially abrogated by *Sims*.[59] The Commissioner contends *Sims* did not disturb *Ginsburg's* "separate holding" a claimant must present issues to the ALJ in the first place.

Addressing the same argument in *Muhammad v. Berryhill*, Judge Rice rejected the Commissioner's *Ginsburg* argument. Judge Rice found *Ginsburg* "concerned the basic application of the Social Security Act and regulations, not a structural constitutional challenge to the SSA adjudicatory system at large."[60] Chief Judge Conner rejected an application of *Ginsburg* for similar reasons, finding the imposition of an exhaustion requirement before the ALJ is "quite

11

logical for matters within the expertise of the agency and its ALJs" such as "claims of prejudice on the part of the ALJ and a failure to record portions of the testimony."[61] We agree.

In *Ginsburg*, the claimant argued a denial of the right to a fair hearing because a hearing examiner "displayed prejudice towards her."[62] The Court of Appeals found the claimant should have requested the examiner to withdraw if she believed the examiner prejudiced, as provided by Social Security regulations, and her failure to request withdrawal of the examiner during the hearing constituted a waiver of the objection.[63] We do not read *Ginsburg* as requiring a claimant to raise an Appointments Clause challenge before the ALJ or suffer forfeiture. We agree with Chief Judge Conner imposing an issue-exhaustion requirement at the ALJ level makes sense for matters within the agency's and ALJ's expertise, but not to "a constitutional questio[n] which ALJs are powerless to decide."[64]

In *Lucia*, the petitioner made an Appointments Clause challenge on appeal to the SEC, but *not* at the ALJ level. The Court nevertheless found the challenge on appeal to the SEC timely. It follows the Court in *Lucia*, to the extent it even addresses an issue-exhaustion argument, found a petitioner does not forfeit his claim for failing to raise it at the ALJ level. We do not agree with the Commissioner *Lucia* requires a litigant "must have raised a timely challenge in proceedings before the agency." *Lucia* does not so hold, as the Court there found timely the Appointments Clause challenge made before the SEC and not before the ALJ in two hearings. Neither does *Sims* mandate such a requirement.

In reaching this conclusion, we do not ignore the language of *Lucia* affording relief to "one who makes a timely challenge." But we do not find "timely" to be defined. What is timely? Mr. Culclasure made a timely challenge by raising it in his brief in support of his request for review,

12

filed on August 6, 2018, approximately six weeks after *Lucia* and within weeks of the Commissioner's Emergency Message and the Department of Justice's Memorandum.

The Commissioner argues *Lucia's* "timely challenge" instruction is supported by the plain language of Social Security regulations requiring a claimant to raise all issues, including constitutional issues, to the agency to preserve them for judicial review.[65] The Commissioner points to regulations instructing claimants on "how to request a hearing before an [ALJ]" and including in the request "[t]he reasons you disagree with the previous determination or decision";[66] requiring claimants to notify the ALJ "in writing at the earliest possible opportunity" of any "object[ions] to the issues to be decided at the hearing";[67] providing a mechanism for the disqualification of an ALJ where "he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision" if a claimant "notif[ies] the [ALJ] at [the] earliest opportunity";[68] providing a mechanism for the ALJ to consider "a new issue at the hearing if he or she notifies [a claimant] and all the parties about the new issue at any time after receiving the hearing request and before mailing notice of the hearing decision";[69] and providing an expedited appeal process where, *inter alia*, "[y]ou have claimed, and we agree, that the only factor preventing a favorable determination or decision is a provision in the law that you believe is unconstitutional."[70]

Similar to Judge Numbers in *Bradshaw*, we do not agree Social Security regulations require a claimant to raise a constitutional issue to the ALJ. The regulation referring to a challenge to a "provision in the law that [the claimant] believe[s] is unconstitutional" arises in the expedited appeal process which, by its terms, is optional and, "would not require [a claimant] to raise [his] Appointments Clause challenge before the ALJ because it does not affect the merits of [his] claim for benefits [and] [i]nstead, it only impacts whether the ALJ can address [his] claim."[71] We find

13

the regulations cited by the Commissioner do not mandate an issue is forfeited if not raised at the administrative level unlike, for example, the Securities Exchange Act and the Labor Management Relations Act.[72]

The Commissioner contends the Social Security Administration "must ensure that its adjudicative system is both fair and efficient for all claimants, including those waiting for a hearing," and urges us to apply "the Supreme Court's repeated instructions" in *Lucia, United States v. L.A. Tucker Truck Lines, Inc.,*[73] and *Elgin v. Department of Treasury*[74] "a litigant must have raised a timely challenge in proceedings before the agency." The Commissioner contends forfeiture "serve[s] important efficiency interests, particularly in the context of the SSA's adjudicative system, which issues hundreds of thousands of decisions each year" and remanding Mr. Culclasure's claim will "further burden an already-stressed system and add even more months to the wait times for first-time claimants."[75]

We find these cases distinguishable. The Commissioner points us to the Supreme Court's admonition in *L.A. Tucker Truck Lines* "[s]imple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."[76] But the objector in the case made a challenge to the appointment of the hearing examiner under the Administrative Procedure Act, not the Constitution, a distinguishing factor.[77]

We similarly find *Elgin* unpersuasive and inapposite to the facts here. In *Elgin*, the Supreme Court addressed whether the Civil Service Reform Act is the "exclusive avenue to judicial review" when a federal employee challenges an adverse employment action by arguing a federal statute is unconstitutional.[78] The employee did not follow the statutory scheme and neither

14

petitioned for review at the agency level nor appealed to the Federal Circuit, and instead filed a free-standing constitutional challenge in the district court.[79] The Supreme Court held an employee with civil service claims must follow the statutory procedure and may not bring a standalone constitutional claim in district court.[80] We do not have any such statutory scheme here.

The Commissioner's tactic of conceding the citizen is correct but lying in wait to see if he forfeited an argument not adopted in this Circuit appears inconsistent with the "less rigid" nature of Social Security administrative hearings. As the Supreme Court again reminded us earlier this month, the Social Security administrative law judge conducts "a disability hearing in 'an informal, non-adversarial manner.'"[81] These proceedings, often held informally over a phone or video conference (like Mr. Culclasure's) with medical record review, differ significantly from the adversary processes in the Securities and Exchange Commission or Department of Labor.[82]

We are not defining this ethos. The Supreme Court did in *Sims v. Apfel*. And did again a few weeks ago in *Biestek*. We reject a reading of *Sims* requiring us to craft a caveat on the Supreme Court's direction for judges to avoid creating issue preclusion concepts when the Social Security Administration does not suggest preclusion.

Absent persuasive authority or statutory scheme or regulation, we do not find support for the Commissioner's position Mr. Culclasure forfeited his Appointments Clause claim. But even if Mr. Culclasure forfeited his claim, we would excuse the requirement of arguing constitutionality as futile, as analyzed below.

15

### B. Even if there is an exhaustion requirement for an Appointment Clause challenge before ALJ Flynn in July 2017, should we excuse Mr. Culclasure's failure to do so?

Even if Mr. Culclasure forfeited his Appointments Clause challenge, we would excuse it because it would have been futile to make an argument before ALJ Flynn who could not have decided a constitutional challenge and otherwise did not have the benefit of *Lucia* and the Administration's and Solicitor General's July 2018 responses.[83]

We find persuasive, as did Chief Judge Conner, the Supreme Court's decision in *Freytag v. Commissioner of Internal Review*[84] to excuse Mr. Culclasure's failure to raise an Appointments Clause claim to ALJ Flynn. *Freytag* is an Appointments Clause case. Petitioners challenged the appointment of a special trial judge in the United States Tax Court.[85] The Commissioner of Internal Revenue argued petitioners waived their Appointments Clause challenge by failing to "timely" object to the assignment of a special trial judge and by consenting to the assignment.[86]

The Court noted its precedent in "exercis[ing] its discretion to consider non-jurisdictional claims that had not been raised below."[87] And while the Court recognized "as a general matter, a litigant must raise all issues and objections at trial," it excused the "timely" failure to raise an Appointments Clause challenge where the constitutional challenge "is neither frivolous nor disingenuous" and the "alleged defect in the appointment ... goes to the validity of [the court] proceeding that is the basis for this litigation."[88] The Court held "this is one of those rare cases in which we should exercise our discretion to hear petitioners' challenge to the constitutional authority of the [judge]."[89]

The Commissioner argues *Freytag* did not "categorically" excuse all Appointment Clause challenges from forfeiture.[90] She argues futility is not a basis for remand, again relying on *L.A. Tucker Truck Lines* and *Elgin*. Citing *Elgin*, the Commissioner contends even where an agency

16

"arguably lacks authority" to decide constitutional claims, the Supreme Court's holding requires claimant to "comply with the agency's administrative review scheme."[91] But, as discussed above, the Supreme Court did not reject a futility argument; it based its decision on a statutory framework requiring the plaintiff federal employee to bring all claims to the agency and in the Federal Circuit and disallowed a free-standing constitutional claim. There is no statutory or regulatory requirement in the Social Security context. *Elgin* is distinguishable for this reason.

We join Chief Judge Conner, Judge Rice, and Judge Lloret in excusing a requirement to raise an Appointments Clause challenge at the administrative level for Mr. Culclasure. Judge Rice and Judge Lloret relied on the reasoning in *Freytag*. They found an Appointments Clause challenge, even if required to be made at the ALJ level, would have been futile because the ALJ could not have ruled on the issue.

Chief Judge Conner found even if the claimant should have raised his Appointments Clause challenge in the administrative process to preserve the issue for judicial review, it would be excused under *Freytag*.[92] Chief Judge Conner reasoned the Appointments Clause argument "features many of the same hallmarks underlying *Freytag's ration decidendi*": the constitutional challenge is "neither frivolous nor disingenuous" – pointing to the President's Executive Order issued after *Lucia* and the Solicitor General's post-*Lucia* guidance conceding all ALJs "are inferior officers and must be appointed as such" - and the ALJ's decision "impacts the validity of the underlying proceeding" because the "final agency decision in this case was issued by an administrative officer whose appointment did not comply with constitutional requirements."[93]

Addressing the Commissioner's argument *Freytag* "did not open the door for every untimely Appointments Clause challenge," Chief Judge Conner highlighted three points to support finding a "rare case" under *Freytag*: (1) the Commissioner identified no authority, and the court

17

could not find any, "suggesting that the agency's ALJs could resolve constitutional challenges to their own appointment," pointing to the agency's Emergency Message instructing its ALJs to document, but not address, an Appointments Clause challenge; (2) under *Sims*, although claimants may raise constitutional challenges before the Appeals Council, they are not required to do so; and (3) unlike other agencies, "the Social Security Administration has no statutory analogue warning its claimants that failure to raise a constitutional question before the agency may risk forfeiture of the issue."[94]

Judge Rice cited the Social Security's Emergency Message acknowledging ALJs are powerless to decide constitutional issues and "directed ALJs to respond to a claimant's Appointments Clause challenge only by 'acknowledg[ing] that the issue was raised,' and noting in the hearing decision that '[the ALJ does] not have the authority to rule on [the] challenge."[95] Judge Rice found the Social Security Administration's "directive acknowledges the futility of raising a *Lucia* claim at the ALJ level."[96]

Judge Lloret also found the ALJ had no power to provide the relief required by *Lucia*, a remand for hearing before a constitutionally appointed ALJ, citing, in part, the same Emergency Message as Judge Rice.[97] Both Judge Rice and Judge Lloret found the claimants raised the Appointments Clause challenge at the earliest possible opportunity after *Lucia*.

At bottom, the Commissioner does not explain why Mr. Culclasure's Appointments Clause challenge would not have been futile if made before ALJ Flynn over a year before *Lucia* and the Administration's and Solicitor General's response to *Lucia*. We agree with Chief Judge Conner's reasoned decision. The Commissioner did not properly appoint ALJ Flynn to resolve Mr. Culclasure's claim for disability benefits. ALJ Flynn could not have ruled on this constitutional issue; the Administration does not address this exhaustion or futility in its regulations; and, the

18

Supreme Court decided a similar issue involving the SEC long after ALJ Flynn's denial of Mr. Culclasure's benefits. Finding the substantially similar facts as reviewed in Chief Judge Conner's decision, we conclude Mr. Culclasure's Appointments Clause challenge, even if forfeited, is excused as futile.

## III. Conclusion

We cannot find a reason to today craft a judicially created requirement of issue exhaustion based upon other district and magistrate judges interpreting "timely" in a manner not supported in the Supreme Court's or our Court of Appeals' jurisprudence. The Commissioner is arguing this "issue exhaustion" as a litigation tact in response to *Lucia.* We appreciate the fairness of the forfeiture defense for hearings before administrative law judges after *Lucia* last June. But how can we craft an "issue preclusion" forfeiture before the Supreme Court defined the issue or the Commissioner issued the Emergency Message? We cannot ignore the Supreme Court's *Sims* holding even though it did not specifically address a need to raise challenges before the administrative law judge. Nothing in the Supreme Court's later cases, or from our Court of Appeals, permits this stretch.

In the accompanying Order, we remand to the Commissioner for a hearing before another properly appointed administrative law judge.

---

[1] Administrative Record ("R") 120.

[2] R. 140.

[3] R. 85-88.

[4] R. 26-74. Timothy Trott, Esquire represented Mr. Culclasure in the administrative process. Robert Savoy, Esquire now represents Mr. Culclasure.

[5] R. 8-22.

[6] R. 6-7.

[7] R. 1-5.

[8] ECF Doc. No. 11 at 2-3.

[9] --- U.S. ---, 138 S.Ct. 2044, 201 L.Ed. 2d 464 (2018).

[10] Mr. Culclasure additionally argues "alleged legal errors" challenging ALJ Flynn's decision on its substance. We decline to offer an advisory opinion on these challenges.

[11] ECF Doc. No. 14 at 18-25.

[12] ECF Doc. No. 15.

[13] ECF Doc. No. 17. Judge Hart additionally found substantial evidence supporting the ALJ's decision.

[14] ECF Doc. No. 18. In addition to alleging Judge Hart erred in rejecting the Appointments Clause challenge, Mr. Culclasure argues Judge Hart erred in finding ALJ Flynn reasonably explained: (1) her assessment of Mr. Culclasure's residual functional capacity; (2) rejecting Mr. Culclasure's testimony; and (3) explaining her rejection of medical evidence. We will not offer advisory *dicta* on these challenges but expect the properly appointed administrative law judge will be mindful of these concerns in the next hearing.

[15] ALJ Flynn's decision, the Appeal Council's denial, and Mr. Culclasure's complaint in this Court all occurred before the June 21, 2018 *Lucia* opinion.

[16] 515 U.S. 177 (1995).

[17] *Lucia*, 138 S.Ct. at 2051. The "Appointments Clause" is found in Article II, Section 2, Clause 2 of the United States Constitution. It provides the power to appoint, among other positions, "Officers of the United States," shall reside with "the President alone, in the Courts of Law, or in the Heads of Departments."

[18] *Lucia*, 138 S.Ct. at 2049-50.

[19] *Id.* at 2050.

[20] *Id.*

[21] *Id.*

[22] *Id.* citing *Bandimere v. SEC*, 844 F.3d 1168, 1179 (10th Cir. 2016). In *Bandimere*, the United States Court of Appeals for the Tenth Circuit held ALJs of the SEC are "inferior officers" who must be appointed consistent with the Appointments Clause. *Bandimere*, 844 F.3d at 1179-82.

[23] *Lucia v. Securities and Exchange Commission*, 138 S.Ct. 736 (2018).

[24] *Lucia* at 2053.

[25] *Id.* at 2055.

[26] *Id.* at 2055.

[27] *Id.* (emphasis added) (quoting *Ryder*, 515 U.S. at 182-83).

[28] *Id.*

[29] Section 3105 provides: "Each agency shall appoint as many administrative law judges as are necessary for proceedings required to be conducted in accordance with section 556 and 557 of this Title. Administrative law judges shall be assigned to cases in rotation so far as practicable, and may not perform duties inconsistent with their duties and responsibilities as administrative law judges."

[30] Exec. Order No. 13,843, 83 Fed. Reg. 32,755 (July 10, 2018).

[31] *Id.*

[32] Soc. Sec. EM-18003 REV 2, https://secure.ssa.gov/apps10/reference.nsf/links/08062018021025PM.

[33] *Id.*.

[34] *Id.* at § C.

[35] *Id.* at §§ C, D.

[36] *Id.* at §§ C.1., 2.

[37] *Id.* at § C.3.

[38] *Id.*

[39] The Solicitor General's memorandum is marked as "Privileged and Confidential Attorney Work Product." According to a recent Harvard Law Review article, the memorandum "was leaked to the press" on July 23, 2018. *See* Guidance on Administrative Law Judges After *Lucia v. SEC (S.Ct.), July 2018*, 132 Harv. L. Rev. 1120, 1122 n. 34 (Jan. 10, 2019). The Solicitor General's memorandum is referred to by at least one other court. *See Page v. Comm'r of Soc. Sec.*, 344

F.Supp. 3d 902 (E.D. Mich. 2018). The Solicitor General's memorandum is attached as an exhibit to a filing in *Page* but is protected from public access. We do not attach the memorandum.

[40] *Lucia*, 138 S.Ct. at 2055.

[41] 515 U.S. 177 (1995).

[42] *Id.* at 182.

[43] *Id.* at 179.

[44] *Id.* at 182-83.

[45] *See Freytag v. Comm'r Internal Revenue*, 501 U.S. 868, 878-79 (1991) (Appointments Clause objections to judicial officers are non-jurisdictional structural constitutional objections "that can be considered on appeal whether or not they are ruled upon below"); *see also Bizarre v. Berryhill*, No. 18-48, 2019 WL 1014194, at *3-*4 (M.D. Pa. Mar. 4, 2019) (rejecting Commissioner's argument non-jurisdictional Appointments Clause challenge is forfeited).

[46] 530 U.S. 103 (2000).

[47] *Id.* at 107.

[48] *Id.* at 110-11.

[49] *Id.* at 110.

[50] *Id.* at 111-12.

[51] *Id.* at 112.

[52] *See Bizarre v. Berryhill*, No. 18-48, 2019 WL 1014194 (M.D. Pa. Mar. 4, 2019) and *Cirko o/b/o Cirko v. Berryhill*, No. 17-680, 2019 WL 1014195 (M.D. Pa. Mar. 4, 2019). Chief Judge Conner issued an order in *Circko* based on his decision in *Bizarre*.

[53] *Muhammad v. Berryhill*, No. 18-172, ECF Doc. No. 25 (Nov. 2, 2018). Also on November 2, 2018, Judge Rice issued a report and recommendation rejecting the Commissioner's argument the claimant forfeited his Appointments Clause challenge by failing to raise it before the ALJ for the same reasons as explained in *Muhammad*. *See Godschall v. Comm'r of Soc. Sec.*, No. 18-1647, ECF Doc. No. 12. Judge Rice's reports and recommendations in *Muhammad* and *Godschall* are now before the Honorable Gerald J. Pappert.

[54] *Perez v. Berryhill*, No. 18-1907, ECF Doc. No. 15. The Commissioner filed objections to Judge Lloret's report and recommendation. The objections are now before the Honorable Timothy J. Savage.

[55] *Bradshaw v. Berryhill*, No. 18-100, 2019 WL 1510953 (E.D.N.C. Mar. 26, 2019). The parties consented to the jurisdiction of United States Magistrate Judge Robert T. Numbers. *Id.* at n.1.

[56] In doing so, we respectfully disagree with Judge Hart's analysis finding persuasive *Abbington v. Berryhill*, a December 13, 2018 decision from in the United States District Court for the Southern District of Alabama. No. 17-552, 2018 WL 6571208 (S.D. Ala. Dec. 13, 2018) (consent to magistrate judge). He concluded unlike proceedings before the Appeals Council, an ALJ depends on the identification of issues by the claimant and even to the extent an ALJ can go beyond the issues identified by a claimant, the ALJ's scope of review would not ordinarily include an Appointments Clause challenge. Judge Hart found this difference distinguishes *Sims* which addressed only issue exhaustion before the Appeals Council.

We are also aware of the December 18, 2018 decision of our colleague the Honorable Paul Diamond rejecting an Appointments Clause challenge in a Social Security matter, *Cox v. Berryhill*, No. 16-5434. Judge Diamond adopted Magistrate Judge Henry Perkin's Report and Recommendation rejecting claimant's Appointments Clause challenge. *Id.* at ECF Doc. No. 26. In *Cox,* the claimant made an Appointments Clause challenge seeking remand based on *Lucia*, contending she had no basis to make an Appointments Clause challenge until the Supreme Court decided *Lucia*. The claimant raised the Appointments Clause challenge for the first time in her objections to the report and recommendation. Unlike Mr. Culclasure, Ms. Cox did not argue an Appointments Clause challenge need not be made before the ALJ or argue such requirement is futile. The Commissioner responded to Ms. Cox's objections, arguing the challenge is forfeited. Ms. Cox did not file a reply brief to the Commissioner's forfeiture argument. Judge Diamond found Ms. Cox waived the challenge for failing to raise it during administrative proceedings. ECF Doc. No. 26 at 3-4. Judge Diamond rejected Ms. Cox's argument no authority existed to support an Appointments Clause challenge until *Lucia*, noting a circuit split on an Appointments Clause challenge before *Lucia*. *Id.* at 4. The parties did not develop the forfeiture and futility arguments in *Cox* and, consequently, Judge Diamond did not analyze those issues.

We are also aware of a March 29, 2019 decision of the Honorable Robert B. Kugler of the United States District Court for the District of New Jersey disagreeing with Judge Rice's reasoning in *Muhammad* and rejecting claimant's Appointments Clause challenge as untimely. Judge Kugler rejected the argument based on *Sims*, finding "the *Sims* argument has been uniformly rejected by courts across the country, which have recently ruled that a *Lucia* challenge must be raised *before* the ALJ." *Jackson v. Berryhill*, No. 18-591, 2019 WL 1417244, at \*5, n.2 (D.N.J. Mar. 29, 2019). We are not aware of the Supreme Court or our Court of Appeals defining "timely" in this manner.

[57] *Sims*, 530 U.S. at 112.

[58] ECF Doc. No. 14 at 25 (emphasis added).

[59] 436 F.2d 1146 (3d Cir. 1971).

[60] No. 18-172, ECF Doc. No. 25 at 10 (footnote omitted).

[61] *Bizarre*, 2019 WL 1014194 at \* 3.

[62] *Ginsburg*, 436 F.2d at 1151-52. The claimant in *Ginsburg* also argued she did not receive a fair hearing because portions of her expert's testimony were not recorded during the hearing. The Court of Appeals found this objection "waived by the appellant at the administrative level." *Id.* at 1152. The alleged failure to transcribe all the testimony "was noted at the hearing and at that time the examiner gave [claimant's] attorney the opportunity to ask further questions in order to remedy any omissions that may have occurred," and waived. *Id.*

[63] *Id.* at 1152.

[64] *Bizarre*, 2019 WL 1014194 at * 3.

[65] ECF Doc. No. 14 at 24.

[66] 20 C.F.R. § 404.933(a)(2).

[67] 20 C.F.R. §§ 404.939; 416.1439.

[68] 20 C.F.R. §§ 404.940; 416.1440.

[69] 20 C.F.R. § 404.946(b).

[70] 20 C.F.R. § 404.924(d).

[71] *Bradshaw*, 2019 WL 1510953 at * 7.

[72] *Bizarre*, 2019 1014194 at * 3 (citing 15 U.S.C. § 78y(c) and 29 U.S.C. § 160(e)).

[73] 344 U.S. 33 (1952).

[74] 567 U.S. 1 (2012).

[75] ECF Doc. No. 14 at 24-25. Judge Hart agreed with the Commissioner. Judge Hart distinguished the cases relied on by Mr. Culclasure, reviewed decisions from district courts around the country rejecting the argument, concluded Mr. Culclasure waived his Appointments Clause challenge, and recommended we deny his request for review.

[76] *L.A. Tucker Truck Lines*, 344 U.S. at 37.

[77] Judge Rice found *L.A. Tucker Truck Lines* unpersuasive because the case involved Interstate Commerce Commission proceedings which he found "adversarial in nature and bear little similarity to the unique nature of SSA proceedings" and because the challenge to the hearing examiner was made under the Administrative Procedure Act and not the Constitution. *See Muhammad*, No. 18-172, ECF Doc. No. 25, at 11. Judge Lloret relied on Judge Rice's analysis to reject *L.A. Tucker Truck Lines*. *See Perez*, No. 18-1907, ECF Doc. No. 15, at 10-11. Chief Judge Conner reached the same conclusion. *See Bizarre*, 2019 WL 1014194 at * 4.

[78] *Elgin*, 567 U.S. at 5.

[79] *Id.* at 7-8.

[80] *Id.* at 8.

[81] *Biestek v. Berryhill*, 139 S.Ct. 1148 (2019) (quoting 20 CFR §404.900(b) (2018)).

[82] For example, a decision issued after briefing highlights this distinction in labor administrative proceedings. The United States Court of Appeals for the Tenth Circuit recently held, although not in a Social Security case, a plaintiff waived its constitutional challenge to the appointment of a Department of Labor ALJ for failing to raise the issue in the agency, noting *Lucia* requires a "timely challenge" to the constitutional validity of an ALJ's appointment. *Turner Bros., Inc. v. Conley*, --- F. App'x ---, 2018 WL 6523096 (10th Cir. Dec. 11, 2018). In *Turner Brothers*, the plaintiff company petitioned for review of a decision by the Department of Labor Benefits Review Board affirming an award of benefits by an ALJ to a company employee under the Black Lung Benefits Act. *Id.* at *1. The company challenged the ALJ's authority under the Appointments Clause at litigation, but did not make the challenge before the ALJ or the Benefits Review Board. The Department of Labor argued the company waived the issue by failing to raise it in the administrative process, relying on *Lucia's* requirement a claimant make a "timely challenge to the constitutional validity of the appointment" of the ALJ. The Court of Appeals rejected the company's argument, finding its failure to raise the Appointments Clause challenge before the ALJ or the Benefits Review Board "constitutes a failure to exhaust administrative remedies and deprives the Court of Appeals of jurisdiction to hear the matter." *Id.* at *1-*2. The Court of Appeals found because the Appointments Clause challenges are non-jurisdictional, it may be waived or forfeited, and declined to address a futility argument because the company "does not make any constitutional challenges to the governing statutes or regulations, or to the Board's award of benefits." *Id.* One district court applied *Turner Brothers* to Social Security cases finding an Appointments Clause challenge forfeited where the claimant failed to raise the challenge at the administrative level. *See A.T. v. Berryhill*, No. 17-4110, 2019 WL 184103 at * 7 (D. Kan. Jan. 14, 2019). We do not define "timely" based on examples; we have no basis to find Mr. Culclasure's arguments under the Appointments Clause at his first opportunity weeks after the Emergency Message and Solicitor General's direction is, by definition, untimely.

[83] *See* ECF Doc. No. 11 at 2-3; ECF Doc. No. 15 at 2. Mr. Culclasure contends Judge Hart "does not even bother to mention" the futility argument. We disagree. Judge Hart reviewed Mr. Culclasure's argument and, in the context of his forfeiture analysis, necessarily considered a futility argument including in *Jones Brothers*, the case on which Mr. Culclasure relies to support his argument.

[84] 501 U.S. 868 (1991).

[85] *Id.* at 871-72.

[86] *Id.* at 878.

25

[87] *Id.*

[88] *Id.* at 879.

[89] *Id.*

[90] ECF Doc. No. 14 at 20.

[91] ECF Doc. No. 20 at 10-11.

[92] *Bizarre*, 2019 WL 1014194 at * 4.

[93] *Id.* at *5.

[94] *Id.* at *6 (internal citations omitted) (footnote omitted).

[95] *Muhammad*, No. 18-172, ECF Doc. No. 25 at 11-12. We do not have the version of the Emergency Message referred to by Judge Rice; we have only a later revised version 2.

[96] *Id.* at 12.

[97] *Perez*, No. 18-1907, ECF Doc. No. 15 at 12-15.