**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL CULCLASURE** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 18-1543** |
| | : | |
| **COMMISSIONER OF THE SOCIAL** | : | |
| **SECURITY ADMINISTRATION** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                    **June 15, 2020**

Social Security claimant Michael Culclasure persuaded us to remand the Commissioner's order denying him benefits because the Commissioner and the President did not properly appoint the administrative law judge who decided his case as required by the Appointments Clause. We did not follow Judge Hart's reasoned Report and Recommendation we deny remand. We instead followed other cases based on strong policy arguments opposed by the Commissioner. Mr. Culclasure faced contrary precedent in this District and around the country. The Commissioner persuaded several of our colleagues to deny remand. But we disagreed with the Commissioner and found Mr. Culclasure in entitled to remand after succeeding on his Appointments Clause challenge. Our Court of Appeals later affirmed the same sound reasoning we adopted in this case. Having won remand, Mr. Culclasure now seeks attorney's fees as a prevailing party under the Equal Access to Justice Act. Under the Act, the standard is not whether he won before us; the standard is whether the Commissioner's arguments lacked substantial justification. The Commissioner amply met his burden of showing substantial justification. Losing an argument after vigorously arguing a position absent controlling law or undisputed facts does not mean the Commissioner lacked substantial justification for his position and is not the basis for a fee award to a claimant under the Act. We deny Mr. Culclasure's motion for reasonable fees.

I.     **Facts**

Michael Culclasure applied for disability insurance benefits on December 10, 2014 alleging a disability onset date of March 29, 2011.[1]  Mr. Culclasure alleges a back injury and arthritis as disabling conditions.[2]  The Social Security Administration denied his claim on February 20, 2015.[3]  At Mr. Culclasure's request, Administrative Judge Monica L. Flynn held a video hearing on July 5, 2017 with Mr. Culclasure and his counsel.[4]  Administrative Judge Flynn denied Mr. Culclasure's application for benefits, finding him not disabled under the Social Security Act.[5]  Mr. Culclasure filed a request for review of Administrative Judge Flynn's decision with the Appeals Council.[6]  On March 14, 2018, the Appeals Council denied Mr. Culclasure's request for review rendering Administrative Judge Flynn's decision final.[7]  Mr. Culclasure timely sought our judicial review of Administrative Judge Flynn's decision on April 12, 2018.

Almost three months into this case, the Supreme Court decided *Lucia v. Securities and Exchange Commission* which addressed the ability of administrative law judges in the Securities and Exchange Commission to preside if they are not constitutionally appointed.[8]  In *Lucia*, the Securities and Exchange Commission charged Raymond Lucia for violating securities laws and assigned the case to Administrative Judge Cameron Elliot.[9]  Administrative Judge Elliot issued fact findings and decided Mr. Lucia's conduct violated securities laws.[10]  Mr. Lucia appealed Administrative Judge Elliot's decision to the Securities and Exchange Commission and argued the entire administrative proceeding was invalid because Administrative Judge Elliot had not been constitutionally appointed.[11]  The Commission rejected this argument, and the parties disputed this issue until ripe for the Supreme Court's review.

The Court held administrative law judges working for the Securities and Exchange Commission, including Administrative Judge Elliot, are "inferior officers" who must be appointed consistent with the Appointments Clause of the United States Constitution.[12]  And because Mr.

Lucia made a "timely challenge to the constitutional validity" of Administrative Judge Elliot's appointment, the Court awarded Mr. Lucia a new hearing before a different, constitutionally appointed administrative law judge.[13]

Within weeks of the Court's *Lucia* decision, the President issued a July 10, 2018 Executive Order excepting all administrative law judges appointed under 5 U.S.C. § 3105[14] from competitive service selection procedures.[15] The Executive Order noted the "expanding responsibility for important agency adjudications, and as recognized by the Supreme Court in *Lucia*, at least some and perhaps all administrative law judges are 'Officers of the United States' and thus subject to the Constitution's Appointments Clause, which governs who may appoint such officials."[16]

On August 6, 2018, Mr. Culclasure filed a brief with this Court supporting his request for review, raising, for the first time, an "alleged administrative error" in having the case resolved by an administrative law judge not properly appointed.[17] Relying on *Lucia*, he argued Administrative Judge Flynn's appointment violated the Constitution's Appointments Clause. Because of this deficiency, he sought remand for a new hearing before a different, constitutionally appointed administrative law judge. Mr. Culclasure argued he did not waive his Appointments Clause challenge by failing to raise it during the administrative proceedings, citing to *Sims v. Apfel* and *Jones Brothers v. Secretary of Labor*.[18] Mr. Culclasure also challenged Administrative Judge Flynn's decision on the merits, claiming Administrative Judge Flynn inadequately explained her residual functional capacity assessment, improperly rejected certain medical evidence, and failed to credit his testimony regarding pain.

The Commissioner responded Mr. Culclasure forfeited his Appointments Clause challenge by failing to "timely" raise it to either Administrative Judge Flynn or the Appeals Council.[19] The

Commissioner cited to caselaw and Social Security regulations to support his forfeiture argument.[20]   The Commissioner also defended the merits of Administrative Flynn's decision.

We referred Mr. Culclasure's petition to the Honorable Jacob P. Hart, United States Magistrate Judge, for a report and recommendation. Judge Hart issued his report and recommendation in January 2019.   He recommended we affirm Administrative Judge Flynn's decision on the merits, finding substantial evidence supported Administrative Judge Flynn's decision. Judge Hart also recommended we find Mr. Culclasure forfeited his Appointments Clause challenge by failing to raise it before Administrative Judge Flynn in July 2017 or the Appeals Council in early 2018.

Judge Hart framed the Appointments Clause issue as whether a "'timely challenge' in the Social Security context [requires] the issue be raised before the agency."[21]   Judge Hart looked to the two key cases cited by Mr. Culclasure—*Sims* and *Jones Brothers*.   Judge Hart did not find *Jones Brothers* persuasive or *Sims* controlling.   He explained "*Jones Brothers* is distinguishable from this case because the plaintiff there had raised its Appointments Clause argument before the Mine Commission" and "*Sims* expressly noted that it was not deciding whether a claimant must exhaust issues before the [administrative law judge]."[22]   Judge Hart then surveyed the many decisions supporting the Commissioner's position, observing "it does not appear that a [Social Security] claimant in any court has obtained remand under *Lucia*."[23]

Mr. Culclasure timely objected to Judge Hart's report and recommendation.[24] Mr. Culclasure reiterated the issue presented under the Appointments Clause: "Did [Mr.] Culclasure forfeit his Appointments Clause claim by not presenting it to the [administrative law judge] even though such presentation would have been futile?"[25]   Mr. Culclasure summarized his position: "It follows from *Lucia* that [Mr.] Culclasure did not waive his Appointments Clause challenge by

failing to present it to the [administrative law judge].  It follows from *Sims* that he did not waive it by failing to present it to the Appeals Council."[26]

We granted Mr. Culclasure's objection on the Appointments Clause issue in an April 16, 2019 Memorandum.  We concluded Mr. Culclasure did not need to raise his Appointments Clause challenge during the administrative proceedings to lodge a timely challenge on this basis in federal court.[27]  We were guided by "the Supreme Court's decision in *Sims* as identifying the limited role of judge in creating exhaustion doctrines in Social Security appeals."[28]   We also concluded, even if exhaustion did apply, we would excuse Mr. Culclasure's failure to exhaust because his administrative proceedings concluded before the Supreme Court's decision in *Lucia*.[29]  Concluding the Supreme Court's *Lucia* holding required we afford Mr. Culclasure a new hearing before a new, constitutionally appointed administrative law judge, we did not address whether substantial evidence supported Administrative Judge Flynn's decision.[30]

As we observed in our April 16, 2019 Memorandum, no consensus then existed on whether a claimant must raise an Appointments Clause challenge at the administrative level.  In addition to Judge Hart, many colleagues thoughtfully analyzed the same issues and concluded a claimant must raise the Appointments Clause challenge at the administrative level or the claimant waives the ability to raise this issue in federal court.[31]   We found the other way.  Our decision joined earlier opinions declining to impose exhaustion issued by the Honorable Christopher C. Conner, Chief Judge of the United States District Court for the Middle District of Pennsylvania, the Honorable Timothy R. Rice, and the Honorable Richard A. Lloret, United States Magistrate Judges in this District.[32]  The Commissioner appealed our ruling, and Chief Judge Connor's rulings, to our Court of Appeals.[33]

On January 23, 2020, our Court of Appeals affirmed Chief Judge Connor in *Cirko v. Commissioner of Social Security*, holding "exhaustion of Appointments Clause claims is not required in the [Social Security Administration] context."[34]  Our Court of Appeals affirmed the proper remedy for an Appointments Clause violation is a new hearing before a new, constitutionally appointed administrative law judge.[35]  Upon the Commissioner's motion, our Court of Appeals terminated the Commissioner's appeal effecting our remand.[36]

## II.    Analysis

Mr. Culclasure's counsel now moves for his reasonable attorney's fees having successfully persuaded us to remand for a new hearing.  He succeeded before us on his Appointments Clause challenge.  But, as we recently explained in *Cortese v. Commissioner of Social Security*,[37] our standard is different in cases against the United States than it may be in civil rights cases. Congress, by enacting the Equal Access to Justice Act, allows us to award fees to a "prevailing party" unless we "find[] that the position of the United States was substantially justified or that special circumstances make an award unjust."[38]  Prevailing party Mr. Culclasure now moves for reasonable fees under this Act.  The Commissioner opposes Mr. Culclasure's motion arguing he possessed a substantial justification for arguing Mr. Culclasure waived his Appointments Clause challenge.  We agree with the Commissioner.[39]

The Commissioner must show his position was substantially justified at the time he presented it.[40]  The term "substantially justified" does not mean "justified to a high degree," "but rather 'justified in substance or in the main,' that is, justified to a degree that could satisfy a reasonable person."[41]  To prove his position could satisfy a reasonable person, the Commissioner must demonstrate: "(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory it propounded; and (3) a reasonable connection between the facts alleged and

the legal theory advanced."[42]  The Commissioner must substantially justify his position "in both the underlying agency proceeding as well as in the federal court proceeding[.]"[43] Our Court of Appeals instructs "when we decide whether the government's litigation position is substantially justified, the [Equal Access to Justice Act] . . . favors treating a case as an inclusive whole rather than as atomized line items[.]"[44]  We "must not assume that the government's position was not substantially justified because the government lost on the merits."[45]

Unlike the claimant in our recent decision in *Cortese*, Mr. Culclasure challenges the Commissioner's justification for his actions during the administrative and federal court proceedings.  We separately review the Commissioner's position in each phase.

### 1.    The Commissioner shows substantial justification for his administrative position.

The Commissioner asserts his position at the administrative level was substantially justified because (1) Mr. Culclasure did not raise an Appointments Clause challenge; (2) the Commissioner did not need to raise the Appointments Clause issue *sua sponte* as the proceedings took place before *Lucia*; and, (3) because Mr. Culclasure did not raise an Appointments Clause challenge, the Commissioner did not need to address this issue in conducting the proceeding.  Mr. Culclasure argues the Commissioner cannot justify his position at the administrative level because he "held an unconstitutional hearing and issued an unconstitutional decision."[46]

The timeline of events is important in addressing this argument.  Mr. Culclasure filed for benefits in December 2014.  He received a video hearing before Administrative Judge Flynn in July 2017.  Administrative Judge Flynn denied Mr. Culclasure's benefit request. Mr. Culclasure appealed this decision to the Appeals Council who denied Mr. Culclasure's appeal in March 2018. Mr. Culclasure never raised the Appointments Clause issue to Administrative Judge Flynn or to the Appeals Council.  A little over three months after the Commissioner resolved Mr. Culclasure's

claim, the Supreme Court decided *Lucia*—holding administrative law judges in the Securities and Exchange Commission are "inferior officers" who must be appointed consistent with the Appointments Clause.  This holding also carried consequences for administrative law judges in the Social Security Administration.

The Commissioner acted consistent with "settled law" as the administrative proceedings occurred before *Lucia*.[47]    Before *Lucia*, the constitutional appointment status of Social Security administrative law judges had not been declared.  While we expect the Commissioner respond to a claimant's constitutional concerns when raised and to conform to "settled law" consistent with his oath to defend the Constitution, we do not expect nor require the Commissioner to predict how the judiciary will interpret the Constitution in conducting administrative proceedings among varied interpretations.  The Commissioner acted reasonably at the administrative level.  We cannot award fees to Mr. Culclasure on this ground.

### 2.    The Commissioner shows substantial justification for his position in federal court.

We then consider whether the Commissioner had a reasonable basis in law for claiming Mr. Culclasure waived or failed to exhaust his Appointments Clause challenge.  The Commissioner argues he meets his burden of proving reasonableness before us because: (1) Mr. Culclasure did not raise his Appointments Clause challenge during administrative proceedings; (2) many courts, including Judge Hart in this case, found Social Security Administration claimants must raise an Appointments Clause challenge during administrative proceedings; and (3) because Mr. Culclasure did not raise an Appointments Clause challenge during his administrative proceedings, he argued Mr. Culclasure waived or failed to exhaust an Appointments Clause argument.  Mr. Culclasure does not appear to contest the first or third factors at the administrative level or during review in federal court.  We also independently conclude the Commissioner

presents a reasonable basis in truth for his alleged facts and a reasonable connection between the alleged facts and his legal theory.  Mr. Culclasure argues the Commissioner's legal position was not substantially justified.

As in *Cortese*, the Commissioner defends the reasonableness of his asserted theory two ways.  First, he cites the many courts accepting his position at the time he asserted this legal theory.[48]  And second, though he acknowledges our Court of Appeals later disagreed with his legal theory in *Cirko*, the Commissioner maintains our Court of Appeals appreciated in the *Cirko* decision this Appointments Clause issue to be an unsettled area of the law without clear binding precedent before its precedential ruling.

We look to instructive precedent to aide in our review of whether the Commissioner possessed a reasonable basis in law for the theory he advanced.  We look first to *Johnson v. Gonzales*.[49]  In *Johnson*, Liberia native Jimmy Johnson fled Liberia after being forcibly recruited into and then deserting the army of the National Patriotic Front of Liberia.  He sought asylum in the United States.  The United States opposed Mr. Johnson's petition for asylum by relying on the Supreme Court's decision in *INS v. Elias-Zacarias*.[50]  In *Elias-Zacarias*, the Court held an asylum claim based on forcible recruitment into an army is "insufficient to demonstrate persecution on account of political opinion."[51]  But if an asylum seeker showed the army would impute to them political beliefs and persecute them for the imputed political beliefs, *Elias-Zacarias* did not control and other precedent, including *Lukwago v. Ashcroft*, supported granting asylum.[52]

During a second asylum hearing before the Board of Immigration Appeals, Mr. Johnson testified he feared persecution because he felt the army would impute political beliefs to him for his desertion. Without addressing this testimony, the Board denied Mr. Johnson's asylum application, determining Mr. Johnson "ha[d] failed to show that he was persecuted on account of

his political opinion, and that his 'persecution' was not solely the result of the guerillas' aim in seeking to fill their ranks in order to carry out the war with the government and pursue their political goal, their political motive being irrelevant."[53]  Mr. Johnson appealed to our Court of Appeals arguing the Board's decision did not address Mr. Johnson's testimony during the second asylum hearing.  The United States, despite Mr. Johnson's testimony, continued to argue *Elias-Zacarias* barred asylum.

Our Court of Appeals vacated the Board's decision, reasoning the Board incorrectly relied on *Elias-Zacarias* because it overlooked Mr. Johnson's credible testimony about imputed political beliefs, which established a potential ground for asylum under *Lukwago*.[54] After this ruling, our Court of Appeals awarded fees to Mr. Johnson's counsel explaining: "Once the [United States] knew that [Mr.] Johnson had credibly testified that he feared persecution at least in part on account of an imputed political opinion, its continued reliance on *Elias–Zacarias* to argue that the [Board] erred in granting Johnson relief was no longer reasonable."[55]

We also consider a recent decision awarding fees to a claimant issued by our colleague, the Honorable Berle M. Schiller, in *Roberts v. Berryhill*.[56]  In *Roberts*, the Commissioner of Social Security defended his Administration's initial denial of widower's insurance benefits by arguing the Administration was not bound by an Orphans' Court order recognizing the claimant's same-sex marriage.  The Commissioner took this position even though the Social Security Act directed the Administration to extend widower's insurance benefits to a widow if "the courts of the state" would find a "valid marriage."[57]  The Commissioner argued the law allowed him to dispute the evidence relied on by the Orphans' Court judge in deciding the validity of the claimant's marriage.  Judge Schiller, in deciding to award fees, explained the Commissioner's theory lacked support in Pennsylvania law and ran directly contrary to the language of the Social Security Act.[58]

In *Healey v. Leavitt*, a class of elderly and disabled Medicare beneficiaries facing the reduction of home health care services provided by home health agencies sued the Commissioner of the Department of Health and Human Services.[59]   The beneficiaries sought declaratory and injunctive relief seeking to require the Commissioner to compel the home health agencies to provide greater procedural protections to the beneficiaries before reducing or terminating home health services.   The beneficiaries argued the home health agencies' notice practices violated the Medicare Act because the agencies failed to provide advanced written notice of termination, specific reasons for termination, or an explanation of how a beneficiary could demand coverage. The Commissioner did not respond by arguing the home health care agencies complied with the Medicare Act but instead argued the home health agencies were not operating as state actors and therefore did not need to comply with the Medicare Act. The Honorable Dominic J. Squarito entered judgment for the beneficiaries on this issue, accepting Magistrate Judge Thomas P. Smith's reasoning as to why the home health agencies were subject to the Medicare Act's notice requirements.   The beneficiaries then moved for fees.   The Commissioner did not argue a substantial justification for asserting home health agencies were excused from the Medicare Act's notice requirements.   Judge Squarito awarded fees to the beneficiaries, concluding the Commissioner "failed to offer any justification for the Secretary's failure to require [home health agencies] to provide written notice of the termination of benefits prior to the onset of this litigation."[60]

We contrast *Johnson*, *Roberts* and *Healy*—all cases where the United States failed to offer valid precedential support or a reasonable statutory interpretation supporting its defense—to two cases where the United States offered reasonable legal justifications.  In *McLaughlin v. Hagel*, servicemembers sued the Secretary of the Department of Defense challenging the constitutionality

of the Secretary's practice of applying the Defense of Marriage Act to same-sex military spouses under Section 3 of the Act.  Eight months before the servicemembers filed their challenge, President Obama "determined that classifications based on sexual orientation were subject to a heightened standard of scrutiny that [the Defense of Marriage Act] could not meet with respect to legally married, same-sex couples."[61]  President Obama "ordered the Department of Justice to cease its legal defense of equal protection challenges [but] . . . in deference to Congress, the President instructed the Executive Branch to continue to enforce Section 3 pending its possible repeal by Congress or a definitive verdict from the judicial branch."[62]

The Honorable Richard G. Stearns stayed the servicemembers' lawsuit awaiting the Court of Appeals for the First Circuit's review of similar challenges to Section 3.  Judge Stearns continued the stay until the Supreme Court decided *United States v. Windsor* where it held Section 3 of the Defense of Marriage Act is unconstitutional as violative of the Equal Protection Clause.[63]  Following *Windsor*, the Secretary agreed judgment should be entered in favor of the servicemembers but disputed the servicemembers' ability to recover attorney's fees.  Judge Stearns agreed with the Secretary.  He looked to *Windsor* where the Supreme Court observed President Obama's decision to allow Congress or the Supreme Court to determine the vitality of the law despite personal doubts demonstrated respect of separation-of-powers principles.  Judge Stearns explained the Court's *Windsor* decision did not discredit the Secretary's defense solely because the Supreme Court determined the Act's unconstitutionality after the servicemembers brought the lawsuit.

In *Center for Food Safety v. Burwell*, the Center for Food Safety sued the Secretary of the Department of Health and Human Services and the Commissioner of Food and Drugs claiming the Food and Drug Administration's failure to adopt a final rule regarding review of food additives

violated the Administrative Procedure Act.[64]   The parties settled the dispute and agreed to the Honorable Randolph Contreras entering a consent decree requiring the Food and Drug Administration to finalize the proposed rule and submit the proposed rule for publication. Following this resolution, the Center for Food Safety then moved for fees and costs under the Equal Access to Justice Act.

After confirming the Center for Food Safety's status as the prevailing party, Judge Contreras considered whether the defendants held a substantial justification for their position. Judge Contreras, noting the merits are "quite relevant" to determining a legal justification, considered the merits of the dispute in detail.[65] While reviewing the merits, Judge Contreras considered whether the defendants could fairly argue their actions were not final agency action. Looking to the "inclusive whole" of the defendants' position, Judge Contreras concluded the defendants' position was substantially justified.[66] Judge Contreras concluded defendants' position "was not 'flatly at odds with the controlling case law'" and rejected a fee award.[67]

We see today's issue as more akin to *McLaughlin* and *Center for Food Safety* than *Johnson*, *Roberts* or *Healy*.   Our colleague, the Honorable Wendy Beetlestone, remarked on this same Appointments Clause issue in *Holmes v. Berryhill*: "Numerous district courts around the country, including courts within this district had previously agreed with the Commissioner's position that Appointments Clause challenges are subject to exhaustion requirements."[68] The support for the Commissioner's position revealed courts reaching different but both well-reasoned decisions about exhaustion requirements in the Social Security context.   Unlike *Johnson*, the Commissioner reasonably relied on persuasive precedent from district courts around the country throughout this proceeding.   Like *McLaughlin* and *Centers for Food Safety*, the Commissioner cites valid and legitimate legal explanations for pursuing his defense.   And unlike *Roberts* or *Healy*, the

13

Commissioner does not offer a novel but flawed reading or defense of a federal statute or regulation.

Mr. Culclasure responds the Commissioner made "several clearly unreasonable claims of support in the caselaw for his forfeiture argument."[69]  Mr. Culclasure argues the Commissioner unreasonably relied on *L.A. Tucker Truck Lines*, *Elgin*, *Ginsburg v. Richardson*, and certain aspects of  *Freytag v. Commissioner of Internal Revenue.*[70]  We explained why we were not persuaded by *L.A. Tucker Truck Lines*, *Elgin*, or *Ginsburg* in our April 2019 Memorandum.[71]  The Commissioner also did not persuade our Court of Appeals by relying on *Elgin* or *Ginsburg* in *Cirko*.[72]  But, as in *Center for Food Safety*, our review under the Equal Access to Justice Act "favors treating a case as an inclusive whole rather than as atomized line items."[73]  Looking to the inclusive whole, the Commissioner was substantially justified in his legal argument.

The Commissioner's main argument before us focused on Mr. Culclasure not presenting a "timely challenge" to the appointment of Administrative Judge Flynn because, unlike *Lucia*, he did not raise the challenge at the administrative level.  The ultimate question was one of *Lucia*'s reach.  The Commissioner pointed to principles in caselaw arguing exhaustion.  Even if this authority did not persuade us, as in *Center for Food Safety* and unlike *Johnson*, these citations did not run counter to controlling law.[74]  On this issue, we did not have the benefit of controlling law.  We cannot conclude the Commissioner is unreasonable because he cited to potentially unpersuasive authority to support a viable legal theory.

The Commissioner's position, as in *McLaughlin*, had a reasonable basis in law during the pendency of this action. As Judge Beetlestone explained in *Holmes*, the Commissioner's position does not become unreasonable solely because our Court of Appeals later adopted the alternative reasoning.[75]  Our Court of Appeals' decision in *Cirko* confirms this question required parsing

through lessons from persuasive precedent to reach a well-reasoned decision.[76]  Reasonable minds, after study, did and could reach different conclusions.  The Commissioner demonstrated substantial justification for his position opposing Mr. Culclasure's remand arguments.

Mr. Culclasure also contends the Commissioner's position after we issued our April Memorandum cannot be substantially justified.  Mr. Culclasure argues the Commissioner filed a notice of appeal to operate as a *de facto* stay knowing the case would not be argued in the Court of Appeals because our Court of Appeals had already set the briefing schedule in *Cirko*.  Mr. Culclasure argues "[u]sing a notice of appeal as a stay substitute is not innocuous."[77]  Mr. Culclasure argues the Commissioner, to receive a stay, would have to show the harm to the Commissioner resulting from denying the stay outweighed the harm to Mr. Culclasure from denying the stay.  The Commissioner does not specifically respond to this argument, but we see a reasonable basis in fact and law for pursuing an appeal after our April 2019 Memorandum finding in favor of Mr. Culclasure.  Otherwise, the Commissioner would need to distinguish Mr. Culclasure from the other claimants.  He would face certain scrutiny in presenting inconsistent strategies.

## III.    Conclusion

The Commissioner meets his burden of proving a substantial justification for arguing Mr. Culclasure could not recover for an Appointments Clause challenge after failing to raise the issue at the administrative level. Because Congress precludes us from awarding fees when the Commissioner meets his burden of demonstrating a substantial justification based on conflicting caselaw in an unsettled area at the time of the Commissioner's arguments before us, we must deny Mr. Culclasure's request for fees.

---

[1] Administrative Record ("R") 120.

[2] R. 140.

[3] R. 85-88.

[4] R. 26-74. Timothy Trott, Esquire represented Mr. Culclasure in the administrative process. Robert Savoy, Esquire represents Mr. Culclasure in this Court.

[5] R. 8-22.

[6] R. 6-7.

[7] R. 1-5.

[8] 138 S. Ct. 2044 (2018).

[9] *Id.* at 2049-50.

[10] *Id.* at 2050.

[11] *Id.*

[12] *Id.* at 2053-55.

[13] *Id.*

[14] Section 3105 provides: "Each agency shall appoint as many administrative law judges as are necessary for proceedings required to be conducted in accordance with section 556 and 557 of this Title. Administrative law judges shall be assigned to cases in rotation so far as practicable, and may not perform duties inconsistent with their duties and responsibilities as administrative law judges."

[15] Exec. Order No. 13,843, 83 Fed. Reg. 32,755 (July 10, 2018).

[16] *Id.*

[17] ECF Doc. No. 11 at 2-3.

[18] *Id.* (citing *Sims v. Apfel*, 530 U.S. 103 (2000); *Jones Brothers v. Sec'y of Labor*, 898 F.3d 669 (6th Cir. 2018)).

[19] ECF Doc. No. 14 at 18-25.

[20] *Id.* at 18-19 (citing *Lucia*, 138 S.Ct. at 2055; United *States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952); *Elgin v. Dep't of Treasury*, 567 U.S. 1, 23 (2012)).

[21] ECF Doc. No. 17 at 2.

[22] *Id.* at 12, 14 (citations and quotations omitted).

[23] *Id.* at 14.

[24] ECF Doc. No. 18.

[25] *Id.* at 2.

[26] *Id.*

[27] *Culclasure v. Comm'r of Social Sec.*, 375 F. Supp. 3d 559, 570-72 (E.D. Pa. 2019).

[28] *Id.* at 566.

[29] *Id.* at 572-73.

[30] *Id.* at 561 n.10.

[31] *See, e.g.*, *Cox v. Berryhill*, No. 16-5434, 2018 WL 7585561 (E.D. Pa. Dec. 18, 2018) (concluding claimant waived Appointments Clause objection by failing to raise issue at the administrative level) (citing *Garrison v. Berryhill*, No. 17-302, 2018 WL 4924554, at *2 (W.D.N.C. Oct. 10, 2018)*; Salmeron v. Berryhill*, No. 17-3927, 2018 WL 4998107, at *3 n. 5 (C.D. Cal. Oct. 15, 2018)*; Davidson v. Comm'r of Soc. Sec.*, No. 16-102, 2018 WL 4680327, at *2 (M.D. Tenn. Sept. 28, 2018); *Stearns v. Berryhill*, No. 17-2031, 2018 WL 4380984, at *4–5 (N.D. Iowa Sept. 14, 2018)).

[32] *Culclasure*, 375 F. Supp. 3d at 566-67 (citing *Bizarre v. Berryhill*, 364 F. Supp. 3d 418 (M.D. Pa. 2019); *Cirko o/b/o Cirko v. Berryhill*, No. 17-680, 2019 WL 1014195 (M.D. Pa. Mar. 4, 2019); *Perez v. Berryhill*, No. 18-1907, ECF Doc. No. 15 (Jan. 8, 2019); *Muhammad v. Berryhill*, No. 18-172, ECF Doc. No. 25 (Nov. 2, 2018)).

[33] ECF Doc. No. 24.

[34] 948 F.3d 148, 153 (3d Cir. 2020).

[35] *Id.* at 154-55.

[36] ECF Doc. No. 25.

[37] No. 18-3437, 2020 WL 2745741, at *3 (E.D. Pa. May 27, 2020).

[38] 28 U.S.C. § 2412 (d)(1)(A).

[39] As we did not reach the issue of whether Administrative Judge Flynn committed legal error in reaching her decision in our April 2019 Memorandum, we cannot conclude Mr. Culclasure is entitled to an award under the Equal Access to Justice Act on these grounds.

[40] *Stokes v. Bowen*, 811 F.2d 814, 816 (3d Cir. 1987).

[41] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[42] *Morgan v. Perry*, 142 F.3d 670, 684 (3d Cir. 1998).

[43] *Johnson v. Gonzales*, 416 F.3d 205, 210 (3d Cir. 2005).

[44] *Id.* at 211.

[45] *Kiareldeen v. Ashcroft*, 273 F.3d 542, 554 (3d Cir. 2001).

[46] ECF Doc. No. 28 at 2.

[47] *Vacchio v. Ashcroft*, 404 F.3d 663, 675 (2d Cir. 2005).

[48] *See* ECF Doc. No. 27 at 6 n.1 (citing cases where courts concluded Appointments Clause argument must be exhausted in the Social Security Administration context).

[49] *Johnson*, 416 F.3d at 211.

[50] 502 U.S. 478 (1992).

[51] *Johnson*, 416 F.3d at 211 (citing *Elias-Zacarias*, 502 U.S. at 483).

[52] *Id.* (citing *Lukwago v. Ashcroft*, 329 F.3d 157, 181 (3d Cir. 2003)).

[53] *Id.* at 207.

[54] *Johnson v. Ashcroft*, 117 F. App'x 849, 852 (3d Cir. 2004).

[55] *Johnson*, 416 F.3d at 212.

[56] *Roberts v. Berryhill*, 310 F. Supp. 3d 529 (E.D. Pa. 2018).

[57] *Id.* at 535.

[58] *Id.* at 536.

[59] *Healey v. Leavitt*, 485 F.3d 63 (2d Cir. 2007).

[60] *Id.* at 67.

[61] *McLaughlin v. Hagel*, 987 F. Supp. 2d 132, 133 (D. Mass. 2013), *aff'd*, 767 F.3d 113 (1st Cir. 2014).

[62] *Id.*

[63] *Id.* at 134 (citing *United States v. Windsor*, 570 U.S. 744 (2013)).

[64] 126 F. Supp. 3d 114 (D.D.C. 2015).

[65] *Id.* at 123 (quoting *F.J. Vollmer Co., Inc. v. Magaw*, 102 F.3d 591, 595 (D.C. Cir. 1996)).

[66] *Id.* at 125-26.

[67] *Id.* at 126 (quoting *Hill v. Gould*, 555 F.3d 1003, 1006 (D.C. Cir. 2009).

[68] *Holmes v. Berryhill*, No. 19-784, 2020 WL 2126787, at *2 (E.D. Pa. May 5, 2020) (citing *Muhammad v. Berryhill*, 381 F. Supp. 3d 462, 469-70 (E.D. Pa. 2019); *Marchant on behalf of A.A.H. v. Berryhill*, No. 18-0345, 2019 WL 2268982, at *4 (E.D. Pa. May 28, 2019); *Sprouse v. Berryhill*, 363 F. Supp. 3d 543, 550 (D.N.J. 2019)).

[69] ECF Doc. No. 28 at 3.

[70] *Id.* at 3-7.

[71] *Culclasure*, 375 F. Supp. 3d at 570.

[72] *Cirko*, 948 F.3d at 158 n.10.

[73] *Johnson*, 416 F.3d at 211.

[74] Some courts considered *L.A. Tucker* telling of general administrative law principles on exhaustion. *See, e.g., Muhammad v. Berryhill*, 381 F. Supp. 3d 462, 466 (E.D. Pa. 2019).

[75] *Holmes*, 2020 WL 2126787, at *3 (citing *Scarborough v. Principi*, 541 U.S. 401, 414 (2004)).

[76] *See, e.g., Cirko*, 948 F.3d at 155 ("And while *Sims* does not dictate the answer, its lessons loom large.").

[77] ECF Doc. No. 28 at 7.